UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BAYER CROPSCIENCE LP and
MONSANTO TECHNOLOGY LLC,                 )
                                         )
        Plaintiffs,                      )
                                         )
    v.                                   )        No. 4:23-cv-00084-JAR
                                         )
MICHAEL J. HODEL d/b/a                   )
MIKE HODEL,                              )
                                         )
        Defendant.                       )

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' motion for summary judgment (Doc. 31) in

this case involving claims of patent infringement and breach of contract.  There being no

disputed issues of material fact, the Court will grant the motion.

**BACKGROUND**

The uncontroverted facts are as follows.  (Doc. 33, 41).  Plaintiffs Bayer CropScience LP

and Monsanto Technology LLC (collectively Bayer) are Delaware companies headquartered in

St. Louis, Missouri.  Bayer researches, develops, and patents biotechnologies, including

genetically engineered soybean seeds called Roundup Ready 2 Xtend and XtendFlex. Bayer's

Roundup Ready 2 genetic trait, U.S. Patent No. 9,944,945, enables plants to tolerate glyphosate

herbicides like Roundup.  Bayer's Xtend genetic trait, U.S. Patent No. 7,838,729, enables plants

to tolerate dicamba herbicides like XtendiMax.  XtendiMax is a low-volatility, selective

herbicide intended for use on crops containing Bayer's seed technology.  When applied to non-

tolerant crops (i.e., not containing Bayer's technology), XtendiMax will destroy the plants.  The

EPA conditionally registered XtendiMax in 2016 but cautioned Bayer that illegal applications of

1

older dicamba formulations could jeopardize final registration.  In response to crop damage reports in 2017, Bayer amended its XtendiMax directions for use and terms and conditions, designating the product a restricted use pesticide requiring applicator training to minimize off-target movement.

Bayer licenses its seed technology to individual farmers pursuant to a standard Technology Stewardship Agreement (TSA), which permits growers to use the patented seeds for a single planting of a commercial crop.  Farmers must obtain seeds from an authorized dealer each planting season and are prohibited from saving seeds from harvested crops for replanting in a subsequent season. Farmers must use EPA-approved dicamba herbicides and are prohibited from applying unapproved formulations. Farmers must also adhere to a Technology User Guide (TUG), which is amended every year and includes a prohibition on the application of unapproved herbicide formulations to crops containing Bayer's patented traits.  The TSA provides that any changes to the patents and new terms of use will be mailed to the grower annually, and continued use of the technology constitutes acceptance of the new terms.

Defendant Michael Hodel is a farmer in southeast Missouri.  He entered into a TSA in 2011, and Bayer sent him annual updates of the TSA and TUG.  Since 2019, Hodel has exclusively planted soybeans containing Bayer's Roundup Ready 2 Xtend technology.  From 2020 to 2022, Hodel saved and cleaned a total of 2,131 bushels[1] of soybean seeds from prior harvests, in violation of the TSAs and Bayer's patents.  (Doc. 41 at 8-9). Of that volume, 1,555 bushels were treated with an antifungal. Hodel's cleaning and treatment of seeds is evidenced by invoices from Porter's Seed Cleaning Farms of Roe, Arkansas.  (Doc. 33-21).  Hodel sold untreated 252 bushels and replanted 1,879 bushels. (Doc. 41 at 8-9). In October 2022, Bayer

---

[1]    A bushel is 60 pounds, and there are 3,000 seeds in a pound. (Doc. 33-2 at 4).

conducted field inspections and sampling of Hodel's soybean farms at the direction of Dr. Fritz Koppatschek.  His team sampled eight fields totaling 491 acres.  (Doc. 33-14 at 3). Testing of those samples using three different methodologies confirmed the presence of Bayer's patented technology. (Doc. 33-10 at 13-14).  Additionally, during the same period of 2020-2022, Hodel applied an unapproved herbicide called Opti-DGA to soybean crops containing Bayer's technology. (Doc. 33-1 at 12-14).

In January 2023, Bayer filed a complaint against Hodel asserting claims of patent infringement and breach of contract, seeking an injunction against further infringement, treble damages, and attorney fees.  In Counts I and II, Bayer pleads that Hodel knowingly infringed claims 1, 3, 5, and 7 of the '945 patent (Count I) and claims 1, 5, 16, 29, and 30 of the '729 patent (Count II) by saving and replanting seed containing Bayer's Roundup Ready 2 Xtend, and Xtend Flex technology.  In Count III, Bayer pleads that Hodel knowingly infringed claim 23 of the '729 patent by applying unapproved and unlabeled dicamba herbicides to soybean plants containing Bayer's Roundup Ready 2 Xtend and/or Xtend Flex technology.  In Counts IV and V, Bayer pleads that Hodel breached the parties' TSAs by saving and replanting seeds containing Bayer's technology (Count IV) and by applying unapproved herbicide (Count V).  In Count VI, Bayer pleads that, by applying unapproved herbicides on dicamba-tolerant soybeans, Hodel interfered with Bayer's valid business expectancies vis-à-vis the EPA and other soybean and cotton growers who license its technology.  Finally in Count VII, Bayer pleads that Hodel was negligent in applying unauthorized herbicide, causing Bayer harm insofar as illegal use leads to more restrictive application conditions and makes it more difficult for Bayer to secure EPA registration for its herbicides.

In his answer, Hodel did not challenge the validity of Bayer's patents but raised affirmative defenses asserting, *inter alia*, that Bayer's business model is anti-competitive, that the TSAs were obtained under duress and coercion, and that Bayer's calculation of damages is unreasonable. (Doc. 10 at 20-21).

After discovery, Bayer filed the present motion for summary judgment. (Doc. 31).  Hodel filed a one-page response (Doc. 40) simply referring to Bayer's statement of uncontroverted material facts and admitting all material facts (Doc. 41). Centrally, Hodel admits that he entered into a TSA granting him a limited use license to purchase and plant seed containing Bayer's patented technologies and a limited use license to apply EPA-approved dicamba herbicides on emerged crops. He received updated copies of the TSA and TUG at his address. He understood that the license prohibited the saving or selling of seed for replanting, as each new generation of seed would contain Bayer's technology. Nevertheless, Hodel saved, cleaned and treated, sold, and replanted seeds containing Bayer's technology in 2020, 2021, and 2022. Additionally, pursuant to the TSA, Hodel agreed to use labeled, EPA-approved pesticides on crops containing Bayer's technology.  However, in 2020, 2021, and 2022, Hodel knowingly applied an unlabeled and unapproved pesticide formulation over the top of his crops.  Hodel does not advance any affirmative defenses in opposition to Bayer's summary judgment motion, so the Court considers the theories raised in his answer now abandoned.

In light of Hodel's admissions to the entirety of Bayer's statement of uncontroverted facts, Bayer submits in reply that there are no genuine issues of material fact in dispute, so Bayer is entitled to summary judgment as a matter of law.  (Doc. 43)

**DISCUSSION**

Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id*.

Based on Hodel's admissions, the Court must agree that Bayer is entitled to summary judgment.  Hodel does not contest the validity of Bayer's patents, which are presumed valid. 35 U.S.C. § 282(a).  Nor does Hodel challenge the enforceability of the TSAs.  Hodel admits that he infringed the patents and breached the terms of the TSAs and TUGs by saving and replanting Bayer's patented seeds and applying unauthorized herbicide. Accordingly, the Court will grant summary judgment in favor of Bayer.

Bayer requests liquidated damages under § 3(e) of the 2020-2021 TSAs and § 3(f) of the 2022 TSA.  Those provisions stipulate a royalty of $250 per infringing unit.[2] The uncontroverted facts establish that Hodel planted at least 2,415.86 units of seeds saved from a prior harvest and containing Bayer's technology.  (Doc. 41 at 8-9). Bayer thus requests liquidated damages of $603,965.

Under Missouri law, a liquidated damages provision is enforceable if the amount is a reasonable forecast of just compensation for the harm caused by the breach, and the harm is difficult or impossible to estimate.  *Bayer CropScience LP v. Calder*, No. 4:23-CV-01417-SEP, 2024 WL 4764741, at *2 (E.D. Mo. Nov. 13, 2024) (awarding liquidated damages of $250 per

---

[2]    One unit contains approximately 140,000 seeds. (Doc. 33-2 at 4).

unit of saved soybean pursuant to Bayer's 2023 TSA).  Using a hypothetical negotiation and the

15 factors set forth in *Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116

(S.D.N.Y. 1970),[3] Bayer's expert, Mark Hoffman, estimated a reasonable royalty to be $309 per

unit of saved seed in 2020 and $307 per unit in 2021-2022 (Doc. 33-11 at 49), yielding a total

damage award of $743,208. (Doc. 32 at 34).  Hodel's expert, Kelley Still Nichols, confirmed that

calculating a reasonable royalty is "not easy," and different experts could produce varying

results.  (Doc. 33-17 at 7).  She estimated a reasonable royalty of $118, with an upper limit of

$206, averaging years 2020-2022.  (Doc. 33-18 at 4-5).  However, she estimated an upper limit

of $250 for 2021 and $266 for 2022.  (Doc. 33-18 at 11).  Based on the foregoing figures, the

Court finds the parties' agreement for liquidated damages of $250 per unit reasonable and

enforceable. *Calder*, 2024 WL 4764741, at *2.  Hodel does not contest Bayer's entitlement to

liquidated damages of $603,965 pursuant to those provisions of the 2020-2022 TSAs.

Additionally, Bayer seeks a permanent injunction under § 3(e) of the 2020-21 TSA and

§ 3(f) of the 2022 TSA prohibiting Hodel from (1) making, using, selling, or transferring any

soybean or other seed containing Bayer's patented technologies without Bayer's express

permission or (2) applying unapproved formulations of dicamba-based herbicides to Xtend

---

[3]     Those factors are: (1) royalties that a patentee receives for the patent in suit; (2) rates licensee pays for use of other comparable patents; (3) nature and scope of the license; (4) the licensor's established policy regarding licensing of its technology; (5) commercial relationship between the parties; (6) effect on and extent of derivatives or convoyed sales; (7) duration and term of license; (8) established profitability of the product made under the patent, its commercial success, and popularity; (9) utility and advantage of the patented article over old modes; (10) nature of patented invention; character of commercial embodiment of the patent as owned or produced by the licensor; (11) extent to which infringer has made use of invention; (12) portion of profit or selling price customarily allowed; (13) portion of realizable profit attributable to invention; (14) the opinion testimony of qualified experts; (15) the amount a willing licensor and licensee would agree upon at the time of infringement, had both been reasonably and voluntarily trying to reach agreement, including the amount of profit the licensee would be willing to contribute to the license. *Georgia-Pacific*, 318 F. Supp. at 1120.

crops.  Put simply, Bayer seeks enforcement of its patents and licensing agreements.  A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  In patent disputes as in other cases, the decision whether to grant injunctive relief rests within the court's equitable discretion. *Id*. at 394.

The Court finds that a permanent injunction is appropriate here.  The impermissible recycling of patented seeds risks an uncontrolled proliferation of Bayer's technology. *Monsanto Co. v. Hargrove*, No. 4:09-CV-1628 CEJ, 2011 WL 5330674, at *6 (E.D. Mo. Nov. 7, 2011). And the use of unauthorized herbicides jeopardizes Bayer's EPA registration of XtendiMax and causes harm to neighboring growers. (Doc. 41 at 21-25).  Given the nature of these risks, the potential for immeasurable future harm remains, and monetary damages are inadequate.  The balance of relative hardships between Bayer's potential injury and Hodel's compliance clearly favors Bayer, and the public interest is served by the enforcement of valid patents and contracts. Hodel does not contest Bayer's entitlement to an injunction pursuant to the parties' agreements. The Court will grant Bayer's request for both liquidated damages and injunctive relief.

## CONCLUSION

Hodel having admitted all facts set forth in Bayer's statement of uncontroverted material facts (Doc. 41), the summary judgment record establishes that Hodel infringed Bayer's '945 and '729 patents and breached the 2020-2022 TSAs by saving, selling, and replanting soybean seeds

containing Bayer's technology and by applying unapproved herbicide on his crops. There is no genuine dispute as to any material fact, and Bayer is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment is **GRANTED**.  (Doc. 31).

**IT IS FURTHER ORDERED** that judgment is entered for Plaintiffs and against Defendant in the amount of $603,965 in liquidated damages pursuant to the parties' agreements.

**IT IS FURTHER ORDERED** that Defendant is permanently enjoined from (1) making, using, saving, planting, selling, offering to sell, importing, or otherwise transferring any soybean or other seed containing Plaintiffs' patented biotechnologies without express written permission and (2) applying unapproved formulations of dicamba-based herbicides to Xtend crops.

Dated this 18th day of December 2024.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE